# Norristown Borough School District, Appellant, v. Upper Merion Township School District.

*School law—High school—Cost of tuition—Act of May 23, 1907; P. L. 202.*

1. Under the Act of May 23, 1907, P. L. 202, relating to the payment to a school district in which high school pupils resident of another district, are attending, of the pro rata cost of "tuition and school books," the word "tuition" does not include the cost of fuel, light, janitor's salary, and other incidental expenses; nor does it include interest upon bonds of the school district maintaining the high school.

*Constitutional law—Inequality of taxation—School law.*

2. The Act of May 23, 1907, P. L. 202, regulating the payment which a school district, not maintaining a high school, shall make to another school district maintaining a high school, for tuition of pupils of the former district in such high school, is not unconstitutional as creating an inequality in taxation; inasmuch as the district maintaining the high school is not compelled by the act to receive pupils from other districts, and can, therefore, always save itself from loss.

Argued Dec. 5, 1911. Appeal, No. 168, Oct. T., 1911, by plaintiff, from judgment of C. P. Montgomery Co., June T., 1911, No. 35, for plaintiff on case stated in case of Norristown Borough School District v. Upper Merion Township School District. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ. Affirmed.

Case stated to determine the liability of one school district to another for tuition of pupils in a high school.

SWARTZ, P. J., and WEAND, J., filed the following opinion:

No public high school is maintained in the township of Upper Merion. After obtaining the consent of the directors of the Norristown district, thirteen pupils residing in the Upper Merion district attended the Norristown high school, in pursuance of the provisions of the act of March 16, 1905, as amended by the Act of May 23, 1907, P. L. 202. These pupils attended the high school

during the school term beginning in September, 1910. The directors of Upper Merion paid the bills submitted by the Norristown district, for the months of September and October, 1910. When the November bill was presented, the Upper Merion district refused to pay the same. The directors contend that the bill is excessive and not made up in accordance with the provisions of the said act of 1907.

The facts are given in a case stated, and our opinion must be governed and controlled by this submission.

Under the act of 1907, the Norristown district is entitled to recover "the cost of tuition and school books, which shall not exceed that of the tuition and school books of all pupils, both resident and non-resident, pursuing studies of the same grades or courses in the district maintaining such high school." The act also provides: "The directors or controllers, in any district, wherein is located any public high school receiving state aid, from any appropriation made specifically for maintenance and support of such high schools, shall deduct their share of such appropriation from the total cost of tuition and text books, of such school, before reckoning the cost per pupil in making bills for tuition to outside districts for their non-resident pupils."

In the case stated the plaintiff district sets out the various items of expenses incurred in maintaining the high school. These items aggregate $26,015.25. The bills are made out upon the basis that this sum constitutes the cost of tuition in maintaining the high school.

The defendant eliminates certain items from this computation. It claims that these items so rejected by it, form no part of the cost of tuition. The items admitted by the defendant aggregate $18,660. To these amounts there must be added the cost of school books, $1,795.08.

The plaintiff, therefore, bases its computation on $27,810.33, while the defendant contends that the cost of tuition and school books does not exceed $20,455.08.

The controversy arises over the meaning, scope or interpretation we are to give to the words "cost of tuition," as used in the act of 1907. Counsel for plaintiff contend

that "cost of tuition" means, "instruction embracing all of the incidental elements of cost which go to make up the feasible and available course of instruction imparted to the pupil." Counsel for defendant claims that "cost of tuition" means the compensation paid to teachers for their time, labor, skill and learning in imparting instruction. If the words "cost of tuition" stood alone, then the broader and more comprehensive meaning of the words might be urged with more confidence, but as they are coupled with the words "school books," the wider significance of the words seems to be excluded. If "tuition" as used in the act was intended to include all incidental items of cost of instruction, then it was useless to add the words "school books," it was mere idle repetition, for surely school books are part of the incidental expenses of the high school. When the act of 1907 was passed, it was well understood that school books must be purchased at the expense of the district. This duty was imposed upon the respective school boards, as early as 1893, or fourteen years before the act of 1907 was presented to the legislature. A statute should be so interpreted as to give significance to every part of the enactment. Where a statute used a word which has both a general and limited meaning the court will adopt the meaning indicated by the context: Lehigh County v. Shock, 113 Pa. 373.

The words "cost of tuition" may admit of an interpretation broad enough to cover the compensation of teachers and all the expenses attending a school of instruction, such as costs of fuel, light, janitor's salary and other incidental expenses, but our research has not disclosed any case where the courts have so ruled, nor has our attention been called to any authority where such significance was given to the words. This limited meaning, or what may be termed the ordinary meaning, was given to the word "tuition," in the following cases: State v. Wisconsin University, 54 Wis. 159 (11 N. W. Repr. 472); Bryant v. Whisenant, 52 So. Repr. 525 (Ala.); Linton v. Lucy Cobb Institute, 45 S. E. Repr. 53 (117 Ga. 678). In

these cases the courts said, "that fees for tuition did not include expenses for heating and lighting and other incidental costs;" "that there is a well-defined distinction between tuition and a reasonable incidental fee for heating and lighting the schoolroom." In Linton v. Lucy Cobb Institute, 45 S. E. Repr. 53 (117 Ga. 678), the meaning of "fees for tuition" was discussed. The court said, "the fees paid by students are not in the nature of rent for the use of the buildings. These fees are for instruction—for the time, labor, skill and learning of the professors. Buildings, apparatus, desks, blackboards are necessary, but incidental, and nothing approaching a rent charge is made to those who gather in the halls to listen to the living voice of the teacher. It is for what he imparts that the student pays."

The fact that the legislature in the new school code added the word "supplies" to the words "cost of tuition and school books" indicates that it was not supposed that "cost of tuition" would cover "supplies," otherwise it was surplusage to add the word.

We think the Linton case gives the ordinary meaning of the words when we speak of the "cost of tuition." The charge for tuition in a college or other institution of learning does not ordinarily include room rent, light and fuel. It is argued by counsel for plaintiff that an interpretation of the act which denies compensation upon the basis of the entire cost of maintenance of the high school is unreasonable. We answer that the Norristown district must resort to the act of 1907 to determine its rights against the defendant district. It can demand and receive payment only according to the terms of the statute. It received the pupils with the knowledge that the law fixed the method of determining the compensation. Even if the rate of payment is inadequate, that is not the test that controls the interpretation of the act of 1907. We are not prepared to admit that the cost of tuition and school books, under the scope and significance we give to the words, is inadequate compensation.

Under the state appropriation the Norristown district receives over $20,000 annually. The act of 1907 gives no credit to the defendant district for any part of this appropriation, in computing the cost of tuition in the Norristown high school. If a due proportion of this fund were credited to the high school maintenance, it would materially reduce the estimate of $27,811.33, as the actual money paid out by the district from the local taxes. If the interest on bonded indebtedness, $2,170, is also deducted, the net balance might not exceed the estimate of $20,455.08 which is the sum admitted by the Upper Merion district as the correct basis of settlement.

We do not see how this interest on bonds can be included, as a part of the cost of tuition under the widest scope that can be given to the words. With equal propriety could the interest on the money invested in the high school buildings be included in the estimate. This, as stated in the Linton case, supra, would be an application of the school buildings and grounds to uses for the purposes of corporate gain.

Again, the act of 1907 does not make it obligatory to receive the pupils from outside districts. "The consent of the directors of the district in which said high school is located must be first obtained."

No doubt the framers of the act of 1907 contemplated that the resident pupils of a particular high school might require all the accommodations that were available. In such case the directors were not expected to receive outside pupils. On the other hand, a district may have ample room and a sufficient corps of teachers to receive thirteen outside pupils into the various grades without incurring any material additional expense. The high school district in such event secures a decided advantage in accepting the pupils and receiving the compensation fixed by the act. The salaries of teachers and cost of heat and light are not increased at all in such cases. But we must bear in mind that school laws and school funds cannot always be administered with perfect equality among the several

school districts.  The main purpose of the common school
system is to afford an opportunity to all children, rich and
poor alike, to obtain an education.

In the same spirit, the school laws are framed to bring
a high school within the reach of all pupils who are fitted
and anxious to enjoy its advantages.  The legislature was
careful not to make the terms of admission so burdensome
as to deny these privileges even to the poorest district of
the state.  This purpose of the common school system is
illustrated, in the Act of May 20, 1857, P. L. 587, relating
to the creation of independent school districts, wherein it
is declared that it is not allowable "to carve out the wealth-
ier from the poorer portions of a township or townships."
The thought is, that in the administration of the system
the wealthier sections may at times be required to aid other
localities not so fortunate.  We do not mean to intimate,
that in the case before us the defendant district is not
abundantly able to pay the fullest compensation for her
pupils.  She may be the wealthier of the two districts;
but in construing the law, we must remember that it was
enacted for the state at large and we cannot disregard the
spirit that pervades the common school system, when the
charge is made that a literal interpretation of the act in
question works out an inequality in the administration of
the school funds.

It is further contended, on behalf of the plaintiff district,
that the act, in question, is unconstitutional, if the high
school of Norristown must accept the compensation based
upon our construction of the act.  It is claimed that the
taxpayer of Norristown will be compelled to pay for the
education of the pupils from the defendant district and
that this makes out an inequality in taxation.

There is a twofold answer to this claim.  First, it is not
shown that the Norristown district suffers any loss, and,
secondly, the district voluntarily assumed the education
of the pupils under the terms of the act.  It was not com-
pelled to receive them.

But, if it were true that the Norristown district does not

receive full compensation for the money expended in the education of the defendant's pupils, and the act of 1907 compelled these services at the hands of the Norristown district, still it does not follow that the act is unconstitutional. "School districts are but agents of the commonwealth and are made quasi-corporations for the sole purpose of the administration of the commonwealth's system of public education:" Ford v. School District, 121 Pa. 543. It follows, that the money raised by taxation for school purposes is the property of the school district, only in a limited sense: Hughesville Boro. School District v. Wolf Twp. School District, 40 Pa. Superior Ct. 311. The state can still direct application through her designated agents, so long as the distribution is made under laws that affect all districts alike. The classification of school districts does not offend against the constitution any more than the classification of cities: Com. v. Gilligan, 195 Pa. 504. The legislature had the right to designate how the school districts should apply their revenues in the maintenance of high schools. Surely the legislature may determine how the money appropriated by it for school purposes shall be applied by the school districts. If the state sees fit to direct by general laws that some of this money is to be applied and used in the education of outside pupils, in the established high schools, how can the directors who are but the agents of the sovereign state defeat this purpose?

In Christiana Boro. School District v. Sadsbury Twp. School District, 18 Pa. Dist. Rep. 358, it was said that this authority of the state extended even over the revenues of a district raised by local taxation. It is not necessary, in the case before us, to extend this rule of law beyond its application to the liberal appropriations made directly by the state. It cannot be seriously contended that the general act of 1907 exhausts the appropriations to the several school districts by the small loss, if any, that they may sustain in the education of outside pupils, in their high schools. This doctrine was carried so far in Edmondson v. Board of Education, 69 So. Repr. 274 (108

Tenn. 557), that an act of the legislature which required the city to receive, free of charge, outside pupils residing within one and one-half miles of the city limits, was declared constitutional upon the ground that the city received state aid for her schools. Of course this was special legislation, under our constitution, but it supports the principle applicable to our general act of 1907.

We hold that the act of 1907 is constitutional even if some of the state appropriation is applied to the education of outside pupils in the high schools of the state. But, as already shown, it is not necessary to apply this rule of law because no district having a high school is compelled to receive outside pupils and if it sees fit to do so, under conditions which entail a loss, the act is voluntary.

The plaintiff is, therefore, entitled to charge for every item of expense paid for instruction, that is, for the money paid to those who impart instruction to the high school pupils and for school books.

| | |
|---|---:|
| The plaintiff paid to the teachers who gave all their time to instruction in the high school | $15,450 00 |
| It also paid to teachers for manual training, for instruction in music, physical culture, sewing, to the medical inspector, and for attendance of teachers at the institute. | 3,060 00 |
| The defendant also allows the claim for the athletic trainer and for field expenses. | 150 00 |
| | $18,660 00 |
| To this must be added cost of school books... | 1,795 08 |
| | $20,455 08 |
| We also allow the proportionate share of the salary of the Superintendent and his Secretary for work in the high school | 600 00 |
| | $21,055 08 |
| Less special state appropriation to high school | 400 00 |
| | $20,655 08 |

Perhaps something should be allowed for commence-

ment expenses. So far as any part of the $150 claimed covers money paid for instruction and training for the commencement exercises, it should be allowed against those pupils who participated in the commencement. We assume that any instruction given pertained to the members of the graduating class. The act of 1907 is specific in declaring, that the costs of tuition for outside pupils shall not exceed the cost of other pupils in the same grades. We are not informed by the case stated whether any of the defendant pupils were in the grade of the graduating class. We cannot allow any part of this claim as we do not have the facts which enable us to determine whether any portion of the $150 is chargeable against the defendant pupils, as cost of tuition.

We cannot allow the claim for salary and expenses of the Wiillam McCann library. The case stated sets out that "It is a public library open to all residents of Norristown and vicinity who comply with certain conditions, as to returning books, fines, &c." There is nothing in this statement that casts any liability on the defendant district.

Light, fuel and janitor's services, as already shown, are not costs of tuition. The salaries of the officers of the school board or of their solicitor cannot be allowed. They are no part of the cost of tuition in the high school.

We allowed that part of the superintendent's salary which represents the time devoted by him to the high school. He has supervision over the work of the teachers and their instruction. His services in the high school are a part of the instruction therein. Just what the duties of his secretary are does not clearly appear. The statement declares, in effect, that the charge is made for her work devoted to the high school. If she, under the superintendent, prepares papers for the pupils in the high school, or does some similar work, her compensation may well be considered a part of the cost of tuition.

The cost of tuition and school books for the school year of ten months, less the special state appropriation, under our conclusions, is $20,655.08, or for one month $2,065.50.

The average monthly enrollment, in the high school, is given as $444^5/_8$, so that the monthly cost for each pupil is $4.64½, and for the thirteen pupils, the monthly charge is $60.39, and for the six months $362.34. From this total there must be deducted, according to the agreement, an allowance for one-half month for the absence of Wayne Turner and a similar allowance for the absence of Elizabeth Supplee, or $4.64½. There is also an allowance to be made for overpayments, under protest, for the months of September and October. The payments were at the rate of $6.25 per month, or an excess of $1.60½ per month for each pupil. For the overpayment of thirteen pupils for two months, the amount is $41.73. Deducting these allowances we find that there is due from the defendant district under the case stated the sum of $315.96½. Nothing is said about costs, but we assume that it was the intention of the parties that costs should follow the verdict.

And now, July 1, 1911, judgment is entered upon the case stated in favor of the plaintiff and against the defendant in the sum of $315.97, with costs of suit.

*Error assigned* was in entering judgment for plaintiff on case stated.

*J. P. Hale Jenkins*, with him *N. H. Larzelere*, for appellant.—The court erred in its construction of the Act of May 23, 1907, P. L. 202, in confining "the cost of tuition" as meaning "the compensation paid to teachers for their time, labor, skill and learning in imparting instruction:" Hughesville Boro. School Dist. v. Wolf Twp. School Dist., 40 Pa. Superior Ct. 311.

The act of May 23, 1907, sec. 1, p. 202, is unconstitutional: High School Dist. v. Lancaster County, 49 L. R. A. 343; Bryant v. Whisenant, 52 So. Repr. 525.

*J. Aubrey Anderson*, for appellee, cited as to the construction of the act: State v. Wisconsin University, 54 Wis. 159 (11 N. W. Repr. 472); Bryant v. Whisenant, 52

So. Repr. 525; Linton v. Lucy Cobb Institute, 117 Ga. 678 (45 S. E. Repr. 53).

Cited as to the constitutionality of the act: New Castle v. Cutler, 15 Pa. Superior Ct. 612; Com. v. Gilligan, 195 Pa. 504; Hughesville Boro. School Dist. v. Wolf Twp. School Dist., 40 Pa. Superior Ct. 311; Christiana Boro. School Dist. v. Sadsbury Twp. School Dist., 18 Pa. Dist. Rep. 358; Honesdale School Dist. v. School Dist., 16 Pa. Dist. Rep. 996.

PER CURIAM, March 1, 1912:

This case arose out of a claim of the plaintiff district for the cost of tuition and school books of pupils of the defendant district who attended the high school of the plaintiff district. The questions involved in this appeal are whether the construction given by the learned judges of the court from whose judgment the appeal comes, of the words "cost of tuition" in the Act of May 23, 1907, P. L. 202, is correct; second, whether that construction renders the act unconstitutional. The first question is not free from difficulty, and the judges of this court who heard the case are not entirely agreed upon it, especially as to that portion of the judgment which excluded the cost of light, fuel and janitor's services. But the majority of us conclude, having regard to the context, the ordinary meaning of the word tuition, and the general purpose of the act, that the construction given by the learned judges of the common pleas is more likely to carry out the actual intention of the legislature than the broader construction contended for by appellant's counsel. The reasoning of the opinion, in which both of the judges concurred, fully sustains, we think, the conclusion reached, and we do not see that we can add anything profitably to what they have said. Upon the question of the constitutionality of the act, under this construction of it, we are all agreed and concur in the conclusion reached by the common pleas, for the reasons given in its opinion.

The judgment is affirmed.